UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. HECTOR ORTIZ, Defendant. | Case No. 17cr2283-MMA-1<br><br>**MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**<br><br>[Doc. No. 54] |
|---|---|

On February 16, 2018, Defendant Hector Ortiz pleaded guilty to Count Two of an Indictment charging him with possession of methamphetamine with intent to distribute, in violation of Title 21, United States Code, section 841(a)(1). *See* Doc. No. 34. On July 25, 2018, the Court sentenced Defendant to a mandatory minimum custodial term of 120 months, to be followed by five years of supervised release. *See* Doc. No. 41. Defendant is currently serving his custodial term at Federal Correctional Institute ("FCI") Phoenix in Phoenix, Arizona. According to the Bureau of Prisons, Defendant's anticipated release date is October 2, 2025.[1]

---

[1] *See* Federal Bureau of Prisons Online Inmate Locator, *available at* https://www.bop.gov/inmateloc (last visited Feb. 15, 2023).

1

Defendant, proceeding through counsel, now moves the Court for a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. *See* Doc. No. 54. The government has filed an opposition to Defendant's motion, to which Defendant replied. *See* Doc. Nos. 57, 60. On February 15, 2023, the parties appeared before the Court for oral argument, at which time the Court took the matter under submission. *See* Doc. No. 65. For the reasons set forth below, the Court **GRANTS** Defendant's motion.

## DISCUSSION

Defendant seeks to reduce his sentence to time served due to a sentencing disparity, his rehabilitation, and the effect COVID-19 has had on the Bureau of Prisons ("BOP") operations. The government argues that these circumstances are not extraordinary and compelling and thus do not warrant the relief Defendant seeks.

### A.     Relevant Law

In 1984, Congress authorized courts to reduce a federal inmate's term of imprisonment under the criteria set forth in 18 U.S.C. § 3582(c)(1)(A) as part of the Comprehensive Crime Control Act. Under its original terms, only the Director of the Bureau of Prisons was authorized to file such a motion pursuant to section 3582(c)(1)(A). The First Step Act went into effect on December 21, 2018. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Section 603(b) of the First Step Act modified section 3582(c)(1)(A), which now provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

>  (i) extraordinary and compelling reasons warrant such a reduction; []
>
>  . . .
>
>  and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

**B.    Analysis**

As a threshold matter, the Court finds that Defendant has exhausted his administrative remedies. Courts have jurisdiction over a sentence reduction motion only if: (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring [such] a motion on [their] behalf"; or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021).

According to Defendant, he submitted a request for compassionate release related to COVID-19 on June 2, 2022. Doc. No. 54-1 ("Def. Ex.") H. The Warden denied that request on June 28, 2022. Def. Ex. I. Thereafter, Defendant's attorney supplemented his request on August 24, 2022 based upon the First Step Act. Def. Ex. J. More than 30 days elapsed, and Defendant received no answer. Defendant filed the present motion on November 28, 2022.

The parties do not dispute that Defendant has properly brought this motion. *See* Doc. No. 57 at 6 fn.1 (noting that "Defendant met the statutory exhaustion requirement because he filed this motion after 'the lapse of 30 days' from the date of his request to the warden. 18 U.S.C. § 3582(c)(1)(A)"). Accordingly, the Court has jurisdiction and proceeds to consider Defendant's motion on the merits.

  1.    *Extraordinary and Compelling Reasons*

Defendant asserts that the following three extraordinary and compelling circumstances exist: (1) his 120-month sentencing is unusually long and disparate; (2) his

significant rehabilitation; and (3) the unusually harsh conditions he has endured during the COVID-19 pandemic. He argues that even if each individual reason is insufficient, they should be considered in totality.

### a. Congressional Limitations

Many years prior to the First Step Act, the United States Sentencing Commission published a policy statement addressing the standards for early release. *See* U.S.S.G. § 1B1.13. However, as the Ninth Circuit has explained, section 1B1.13 "is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021), *accord United States v. Elias*, No. 20-3654, 2021 U.S. App. LEXIS 251, at *2 (6th Cir. Jan. 6, 2021); *United States v. Jones*, 980 F.3d 1098, 1108–11 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281–21 (4th Cir. 2020). Rather, the "Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Aruda*, 993 F.3d at 802. To that end, the Ninth Circuit in *Aruda* held that "district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Id.* at 801.

The Supreme Court and the Ninth Circuit have since clarified that this discretion is not without its limits. As the Supreme Court explained in *United States v. Concepcion*,

> It is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained. Nothing in the First Step Act contains such a limitation. Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them.

142 S. Ct. 2389, 2396 (2022); *see also United States v. Chen*, 48 F.4th 1092, 1095 (9th Cir. 2022).

The only binding congressional limitation is that rehabilitation alone does not amount to extraordinary and compelling. *See Chen*, 48 F.4th at 1098 (citing 28 U.S.C. § 994(t)). Defendant does not offer his rehabilitation in isolation. Consequently, there is no relevant, controlling limitation on the Court's analysis. Thus, the Court must consider whether the arguments Defendant advances demonstrate extraordinary and compelling reasons to reduce his sentence.

The government nonetheless spends a portion of its opposition arguing that the Sentencing Commission's pre-First Step Act policy is the framework within which this Court must determine whether extraordinary and compelling circumstances are present. *See* Doc. No. 57 at 6–11. To the extent the government asks the Court to deny Defendant's motion because he does not present any of § 1B1.13's enumerated circumstances, the Court is unpersuaded. Defendant does not argue that any of the identified medical conditions or family circumstances are present, nor is he old enough. The Sentencing Commission's statement does nothing on the present facts to inform this Court's analysis of what is extraordinary and compelling. *See Aruda*, 993 F.3d at 802.

If there was any lingering uncertainty in the Ninth Circuit since *Aruda* as to the applicability of § 1B1.13's inclusive list of extraordinary and compelling circumstances, *Concepcion* and *Chen* have resolved any such doubt. The failure to consider all arguments that are not congressionally barred from consideration amounts to an abuse of discretion. Thus, while Defendant does not assert he warrants compassionate release under the Sentencing Commission's policy statement, the Court must nonetheless consider whether his circumstances are extraordinary and compelling.

It also "bears remembering that compassionate release is a misnomer." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Section 3582(c)(1)(A) speaks only of reductions in sentences. *See id.* Thus, it is of no consequence that Defendant has not presented circumstances that would demand the Court's sympathy. As demonstrated by the case at bar, circumstances can be extraordinary and compelling and yet not necessarily evoke sympathy or pity.

b.      Sentencing Disparity

Following Defendant's March 26, 2017 arrest at the Andrade, California Port of Entry, on April 20, 2017, Defendant waived indictment and was charged in a one-count Information with importation of methamphetamine in violation of 21 U.S.C. §§ 952, 960. *See* Case No. 17cr998-MMA-1, ECF 10, 11. This offense carried no mandatory minimum and a maximum of 20 years in prison. Defendant rejected the government's fast track offer and exercised his right to go to trial.

As the Court noted at sentencing, Defendant thereafter fell "victim to the Attorney General's new policy on drug crimes," Def. Ex. A, and on August 10, 2017, he was charged in a two-count Indictment. *See* Doc. No. 1. Count One of the Indictment charged Defendant with importation of methamphetamine—the same charge as Count One of the Information in Case No. 17cr998-MMA-1. However, Count Two charged Defendant with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). This new charge triggered a mandatory minimum of 120 months, and all parties agreed that Defendant did not qualify for safety valve relief. Defendant was sentenced to 120 months in prison, accordingly.

The First Step Act was signed into law just five months after Defendant was sentenced. Relevantly, the First Step Act expanded § 3553(f)'s safety valve criteria, which authorizes a court to deviate from a drug crime mandatory minimum. Thereafter, the Ninth Circuit addressed the amended safety valve in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021). As amended, a defendant is entitled to safety valve relief if:

(1) the defendant does not have—

(A) more than 4 criminal history points . . . ;

(B) a prior 3-point offense . . . ; and

(C) a prior 2-point violent offense . . . ;

> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the [instant drug] offense;
>
> (3) the [instant drug] offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the [instant drug] offense . . . and was not engaged in a continuing criminal enterprise . . . ; and
>
> (5) [before] the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the [instant drug] offense . . . .

18 U.S.C. § 3553(f)(1)–(5).

In *Lopez*, the Ninth Circuit had occasion to consider whether subsection (1) is conjunctive or disjunctive and determined it was the former. 998 F.3d at 443. Therefore, under the current law in the Ninth Circuit, to be disqualified from safety valve relief under subsection (1), a criminal defendant must have all three circumstances present in (A)–(C).

Many other circuits have disagreed with this interpretation. *See United States v. Haynes*, 55 F.4th 1075, 1078 (6th Cir. 2022) (finding "and" in § 3553(f)(1) to be used in the "distributive" rather than "joint" sense); *United States v. Pace*, 48 F.4th 741, 754 (7th Cir. 2022) (holding that § 3553(f)(1) is to be read disjunctively); *United States v. Pulsifer*, 39 F.4th 1018, 1022 (8th Cir. 2022) (concluding that the introductory phrase "does not have" found in § 3553(f)(1) "distributes" across each statutory condition in § 3553(f)(1)(A)–(C)); *United States v. Palomares*, 52 F.4th 640, 647 (5th Cir. 2022) ("We hold that the phrase 'does not have' independently applies to each subsection in 18 U.S.C. § 3553(f)(1), rendering criminal defendants ineligible for safety valve relief if they run afoul of any one of its requirements."). Nevertheless, the Ninth Circuit's binding opinion in *Lopez* compels this Court to one conclusion: a defendant must meet the criteria in all three subsections of § 3553(f)(1) to be ineligible for safety valve relief.

With this in mind, the Court turns to the effect of *Lopez* on Defendant's circumstances. All parties agree that notwithstanding Defendant's 16 criminal history points, he would be safety valve eligible if sentenced today. According to Defendant, this has resulted in an inequitable sentencing disparity. As Defendant explains, the Court granted his request for a minor role reduction, and he would have received a two-level departure for safety valve. Thus, according to Defendant, not only would deviation from the mandatory minimum have been possible, but the Guidelines range would have adjusted to 100–125 months. Considering the Court's 31-month variance at sentencing, Defendant argues that he may well have been sentenced to 69 months.

The government's position is that the Court already granted Defendant a variance. According to the government, Probation calculated Defendant's Guidelines range as 360 months to life. Doc. No. 57 at 13 (citing Doc. No. 35 at 23). However, with the minor role reduction, the range was 151–188 months. From there, the Court provided an additional 3-level reduction under § 3553(a), resulting in an adjusted offense level of 26 and the Court sentenced Defendant to 120 months at the low end of the range. The government thus argues that this was not the case where the Court was forced to sentence Defendant above the Guidelines due to a mandatory minimum.

The government also argues that *Chen* and the cases it approves involved significantly longer sentencing disparities, ranging from 240 to 516 months. Doc. No. 57 at 14. However, *Chen* involved the § 403(a) stacked sentencing amendments, which necessarily involve significantly lengthier terms of incarceration when compared to enforcement of a single mandatory minimum. Defendant should not be compared to defendants who received stacked sentences, as he did not. Rather, to determine whether there is a sentencing disparity here, the Court compares Defendant to similarly situated defendants sentenced after the First Step Act and *Lopez*.

To that end, Defendant offers persuasive statistics regarding the sentencing in this district for similarly situated defendants since passage of the First Step Act and *Lopez*. For example, in 2018 the average sentence for Criminal History Category VI defendants

sentenced pursuant to Guideline § 2D1.1 was 83 months.[2] In 2021, the average sentence was 61 months, with a median sentence of 60 months.

It is patently clear that sentencing disparities resulting from non-retroactive First Step Act amendments may form part of the Court's extraordinary and compelling analysis. *See Chen*, 48 F.4th at 1098–99. The government does not dispute that the average sentence in this district post-*Lopez* is 61 months. The unavoidable result is that Defendant's sentence of 120 months is disparately longer than the custodial terms his counterparts receive in this district today.

   c. <u>Significant Rehabilitation</u>

As both parties note, and the Ninth Circuit highlighted in *Chen*, Congress has provided that "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). However, Defendant is not asking the Court to consider rehabilitation alone. *See* Doc. No. 54 at 21. Additionally, the fact that Congress used the modifier "alone" signals that it may be relevant and duly considered among other factors. Accordingly, this circumstance bears on the Court's analysis.

Defendant's prison record is remarkable in numerous respects. First and foremost, Defendant has indisputably been a model inmate, receiving not a single infraction on his disciplinary record despite being in custody for nearly 6 years. Def. Ex. D. Further, as Defendant explains, he has dedicated himself to self-improvement while incarcerated. He has taken numerous courses while in custody, including drug education, financial responsibility, exercise and mental health, and resume writing. Defendant has also learned a trade, developed work skills, and works, essentially full-time, despite having entered custody with no work experience. Before sentencing, he began addressing his trauma and addiction, and improving his relationship with God. According to Defendant,

---

[2] *See* United States Sentencing Commission, Interactive Data Analyzer, *available at* https://www.ussc.gov/research/interactive-data-analyzer (last visited Feb. 15, 2023).

he has gained "significant insight into the behaviors and patterns that landed him in prison." Doc. No. 54 at 23.

In support of his rehabilitation, Defendant offers declarations from his mother and cousin. His mother, Victoria Amezcua Ortiz, explains that she has been in constant contact with Defendant while he has been in custody. Def. Ex. B. She contends that he "is now taking accountability for his past actions and he expresses more gratitude than ever before. He constantly tells me that he would like to make up for lost time with me and his 14-year-old son, Seth." *Id.* His cousin, Cassandra Carranza, lived with Defendant while she was in grade school, prior to his incarceration. Def. Ex. C. She states that despite his addiction, she never saw him doing drugs and he never offered her any. *Id.* She also explains that she "witnessed a spiritual growth and personal awareness in" Defendant and that he has "taken a hold of his Christian faith and he has significantly changed." *Id.* She says that Defendant has told her he hopes "to turn his personal experience into an opportunity to help himself and others." *Id.*

Defendant's rehabilitative efforts are highly commendable, and the government does not refute Defendant's position that he has been sufficiently rehabilitated. *See* Doc. No. 57 at 14. Further, the BOP has seemingly recognized Defendant's rehabilitation, as he is projected for release over two years early. Def. Ex. E.

          d.    COVID-19 Considerations

Defendant explains what the COVID-19 pandemic has meant to BOP operations. As of February 16, 2023, FCI Phoenix is classified at Level 1, with minimal modifications.[3] Nonetheless, Defendant contends that he has experienced numerous lockdowns and quarantines, lasting from 10 to 14 days during his period of incarceration.

---

[3] *See* Federal Bureau of Prisons, BOP COVID-19 Statistics, *available at* https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Feb. 16, 2023). When Defendant filed his motion on November 28, 2022, FCI Phoenix was at Level 2. *See* Doc. No. 54 at 24. By December 12, FCI Phoenix had risen to a Level 3 facility. *See* Doc. No. 57 at 3. Sometime in January 2023, FCI Phoenix was reduced to Level 1.

He also asserts he contracted COVID-19 at least once in January 2022 and has not been adequately treated for the lasting effects to his health. Defendant states that he has several medical needs that have not been adequately addressed or treated, and also that the COVID-19 modifications at FCI Phoenix have placed a heavy burden on him. For example, he contends that due to the modifications, he was prevented from having family visits for over two years and that limited staffing has led to a delay in obtaining treatment. Additionally, he explains that he is afraid of the conditions because it is impossible to socially distance while in FCI Phoenix.

As clarified at the hearing, Defendant does not contend his medical afflictions coupled with the risk of contracting COVID-19 pose a serious risk to his health. In any event, Defendant's particular health risks associated with COVID-19 do not amount to extraordinary and compelling. *See, e.g.*, *United States v. Jordan*, No. 3:18-cr-04496-GPC, 2020 U.S. Dist. LEXIS 207024, at *8 (S.D. Cal. Nov. 4, 2020). Further, most courts hold that a prisoner cannot challenge his medical treatment, no matter how egregious, by way of a compassionate release motion. *See, e.g.*, *United States v. Miller*, No. 15-cr-00471-CRB-1, 2021 U.S. Dist. LEXIS 123594, at *11 (N.D. Cal. July 1, 2021).

However, the Court cannot ignore the change in prison conditions that has resulted from COVID-19. *See United States v. Armstrong*, No. 18-cr-5108-BAS-1, 2020 U.S. Dist. LEXIS 135313, at *11 (S.D. Cal. July 30, 2020). The BOP has acknowledged that the operational modifications have placed a heavy burden on inmates and their families.[4] While much of the world has reverted to pre-pandemic normalcy, life in BOP custody has not—if it ever will. "A day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be." *See United States v. Kibble*, 992 F.3d 326, 335 (4th Cir. 2021) (Gregory, C.J., concurring). In an effort to keep COVID-19 at bay, inmates are often isolated or placed in solitary confinement,

---

[4] *See* Federal Bureau of Prisons, Temporary Security Measures Implemented, *available at* https://www.bop.gov/resources/news/20210116_precaution.jsp (last updated Jan. 16, 2021).

prison programs have been suspended or ended entirely, facilities have restricted visitation, and access to nonessential medical care is often limited. *See id.* (collecting cases). The extent of the modifications depends upon a facility's classification. However, FCI Phoenix has jumped from a Level 2 to a Level 3, then back down to a Level 1 in just a two-month period between late November 2022 and January 2023.

By all accounts, the BOP has responded to the pandemic diligently and prudently. Nonetheless, the restrictions have undoubtedly placed heavy burdens on those they were designed to protect.

### e. Totality of the Circumstances

None of the circumstances Defendant offers are extraordinary and compelling in isolation. However, taken in totality, the Court is persuaded that Defendant has presented extraordinary and compelling reasons to reduce his sentence.

Defendant has served nearly 6 years of a 10-year sentence. His sentence of 120-months—pursuant to the mandatory minimum—is disparately longer than the sentences defendants now face for the same conduct. The effect of *Lopez* is best illustrated by this district's deviation from the national average for similarly situated defendants. While the nation-wide average is 136 months in prison, defendants in this district are sentenced on average to 61 months. Accordingly, Defendant has already served more time in custody than his post-*Lopez* counterparts.

Also relevant is that Defendant is less than three years away from release. As such, the BOP has seemingly recognized that Defendant has been sufficiently rehabilitated. To that end, Defendant has demonstrated his rehabilitation. He has received no disciplinary infractions, despite being in custody for nearly 6 years. He has learned a trade skill and works full-time. He has also endured pandemic conditions while in custody. While the same is true for all individuals incarcerated since early 2020, this circumstance is particularly persuasive in light of the fact that Defendant has already served nearly 6 years in prison, while many of his counterparts have not and will not endure these conditions for as long.

As the Ninth Circuit noted in *Chen*, the intent behind enacting § 3582(c)(1)(A) was to address "'situations in which a defendant's circumstances had changed such that the length of continued incarceration no longer remained equitable.'" *Id.* 1098–99 (first quoting *United States v. Ruvalcaba*, 26 F.4th 14, 26 (1st Cir. 2022); then citing S. Rep. No. 98-225, 55-56, 121 (1983); and then citing *United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020)). The Court is not compelled to reduce Defendant's sentence based on the sentencing disparity. *See Concepcion*, 142 S. Ct. at 2396. Nor is the Court is permitted to grant a reduction due to rehabilitation alone. *See* 28 U.S.C. § 994(t). However, it is the combination of these two factors, in conjunction with the effect of COVID-19 on the BOP operations and conditions, that persuades the Court that Defendant's circumstances are extraordinary and compelling such that his continued incarceration is no longer equitable.

    2.    *Danger to the Safety of Others*

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Consideration of the dangers of early release informs the Court's decision here. Section 3142(g) provides:

> Factors to be considered.—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Defendant's current offense, while involving a serious drug-related crime, did not involve violence. Moreover, while Defendant's criminal history is lengthy, it is non-violent. The parties agreed at the hearing that Defendant's only potentially violent conduct is a 2002 arrest for possession of a weapon during the transportation/sale of drugs, of which he was never convicted. The government also conceded at the hearing that Defendant is not a present danger to the community.

Accordingly, the Court agrees that the record demonstrates that Defendant does not pose a danger to the safety of others and finds that any theoretical danger could be sufficiently mitigated by the conditions of release and supervision.

### 3.   *Sentencing Factors*

Assuming the Court finds that Defendant has demonstrated extraordinary and compelling circumstances, it also must still consider whether the sentencing factors support granting compassionate release. Section 3553(a) provides:

> Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

>    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>    (2) the need for the sentence imposed—
>       (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>       (B) to afford adequate deterrence to criminal conduct;
>       (C) to protect the public from further crimes of the defendant; and
>       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>    (3) the kinds of sentences available;
>
>    (4) the kinds of sentence[s] and the sentencing range established for—
>
>       (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . [;]
>
>                                  ( . . . )
>
>    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Beginning with the nature and circumstances of the offense, while involving a serious drug-related crime, it did not involve violence. Additionally, Defendant has served over 70 months of the custodial term imposed in this case—a significant period of time by any definition. With good time credits, his time in custody equates to approximately 89 months. Further, while Defendant has a lengthy criminal record, his personal characteristics weigh in his favor. He has taken responsibility for his actions and has been sufficiently rehabilitated. This is demonstrated through his spotless prison disciplinary record. He also maintains a close relationship with his family.

As to the need for the 120-month sentence, the record is clear that the sentence imposed was greater than necessary to adequately punish and deter Defendant from future misconduct. This district recognizes post-*Lopez* that 60 months in custody is sufficient but not greater than necessary for this crime and Criminal History Category. Defendant has already served longer than the average term and during that time, has taken advantage of the many educational and vocational classes while in custody. And importantly, a lesser sentence will eliminate the existing disparity in his sentence—not create one.

Therefore, after consideration of all the factors set forth in section 3553(a), the Court finds that they weigh in favor of granting Defendant's requested reduction in sentence.

## CONCLUSION

Based upon the foregoing, the Court **GRANTS** Defendant's motion for a reduction in sentence pursuant to § 3582(c)(1)(A) as set forth in the Order and Amended Judgment filed concurrently herewith. The Court **REDUCES** Defendant's custodial sentence to a total term of **time served**. All previously imposed terms and conditions of supervised release remain in full force and effect. The Court imposes the following additional special conditions of supervised release:[5]

4. Defendant must reside with his mother, Ms. Victoria Amezcua Ortiz, in accordance with his proposed release plan. In the event such residence is no longer available or otherwise feasible, Defendant must notify his Probation Officer immediately and thereafter may only reside in a location that is preapproved by Probation and authorized by the Court; and,

---

[5] The Court has the authority to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release," 18 U.S.C. § 3583(e)(2), and finds it appropriate to do so here without a hearing, as the additional term of release is authorized by statute and is one of several restrictive modifications suggested by Defendant as part of his release plan. *See* 18 U.S.C. § 3582(c)(1)(A); Fed. R. Crim. P. 32.1(c)(2).

5. Defendant must remain at his residence at all times for a period of twenty-four (24) months, except for preapproved and scheduled absences for:
   - Employment
   - Education
   - Religious activities
   - Treatment
   - Attorney visits
   - Court appearances
   - Court-ordered obligations or
   - Other activities as approved by the Probation Officer; and

6. Defendant must be monitored for a period of twelve (12) months, with the location monitoring technology at the discretion of the Probation Officer. Defendant must abide by all technology requirements and must pay all or part of the costs of participation in the location monitoring program, as directed by the Court and/or Probation.

**IT IS SO ORDERED**.

Dated:  February 24, 2023

*[signature]*

HON. MICHAEL M. ANELLO
United States District Judge